May it please the court and counsel, my name is Antonio Salazar on behalf of the petitioner Abu Kamara. Mr. Kamara is here because of the denial of his applications for asylum, withholding a removal and convention against torture. As a citizen of Sierra Leone, Mr. Kamara testified that he was 37 years old in the late 1990s and early 2000s. He being a member of the Mandinka tribe testified that they were particularly subjected to acts of violence by the RUF rebels. He testified specifically to three different events, one in which his village was attacked by the rebels, his family home was partially burned down and he testified that when these attacks would occur people would hide in the bush and then come back when it was safe. Several years later in 1997 or 1999 and he wasn't sure he testified that he's illiterate, he's not able to read or write in any language and as a result he has difficulty in remembering dates. He testified they came back another time and this time they did completely burn down the family home and again they hid in the bush. The third and final event that he testified to occurred in 2002 in the early part of the year and again the rebels came in and this time he had his own home. He was married by then and had some children. His home was burned down and in this last event he was attacked by one of the RUF rebels and cut with a sword. He showed the administrative law judge a two-inch scar that he had below his knee and it was also during this time that he last saw his parents that he later heard had died. This is when I read the record. The IJ made an adverse credibility determination here. So what's wrong with that? Your Honor, in this case, I was just about to wind up, he took his family to New York in December of 2002. Now, this appeal revolves around the adverse credibility finding of the administrative law judge which he said in part that Mr. Kamara testified at his hearing on more events than were contained in his application for asylum. This court has previously found that an adverse credibility finding should not be based on the fact that an applicant says more at his hearing than is said in his application and that is exactly what the judge did in this case and he said that the aliens testimony was vague and lacking in material detail. It would be our position that Mr. Kamara simply was trying to amplify the events that are contained in his initial application. I was looking at his application again and it talks about the very same events, although it doesn't give dates. In his testimony and in preparing him for his testimony, we tried to have it be as detailed in terms of when these events happened. The one matter that's not mentioned in the I-589 application is that he was cut on his knee with a sword by one of the RUF rebels, but in terms of the attacks on his village, that is all mentioned in there, although no dates are assigned. Did he talk about the three incidents? Well, when you read the I-589 application, it's our position that he does talk about the incidents, although he doesn't describe them as separate incidents. He's answering the different questions that are posed in the actual asylum application itself and so at the hearing, we're trying to amplify on that and to provide clarity and dates to the different incidents, which is what he did. Let me ask this. The IJ found that his application was not timely for asylum and ordinarily, we don't have any jurisdiction to review that. Now, if we were to find that he was credible, that might change the view of the time that he actually entered, but are we able to look at that? I believe that you are, Your Honor, because it's our position that is not supported in the record either. In his initial application, which was filed in February of 2003, he indicated that he entered in December of 2002, so his application would have been timely, and he testified consistently with that at the hearing. The administrative law judge with no support in the record indicated that he didn't find him to be credible on that issue either, and there was nothing at all to indicate that he entered at any other time or in any other manner. I understand that, but I'm just thinking about the jurisdictional point where we have been deprived of the I'm inquiring whether there's any authority, if we were to decide that he was credible, that we could require the government to revisit that. Well, part of that is included within the adverse credibility finding. It's our position because that was part of the reason that he denied him. He said, I don't find him to be credible. So that would include the date of entry, which I think that the Court would have jurisdiction to say that that is not supported in the record because there's nothing to indicate, for instance, that he was in Sierra Leone at some later point after he says that he was. And the last issue in our brief had to do with changed country conditions, but I think that that really is dependent on resolution of the earlier issues. However, I would indicate that his testimony, it believed, would establish past persecution, therefore creating a presumption of future persecution. That's for asylum purposes. That would be for asylum purposes, yes. If the asylum application was not timely, then we don't have the issue of asylum. We only talk about withholding in CAD. Right. And that's a different standard. That is correct, Your Honor. Is there evidence to show there's a clear probability that he'd face his persecution if he went back to Sierra Leone? Yeah. Well, it would be our position that his testimony, it believed, would establish a presumption of future persecution if he were to be returned. Well, it's a little more than that. That's the asylum standard. Is there a clear probability that he would be persecuted if he goes back? There would be for the other ones, Your Honor. What's the evidence to support the clear probability? Well, it would be the same evidence that we tenored before. I mean, primarily our position is that he was wrongfully denied the asylum relief, Your Honor, and that was the primary focus. He would have no additional evidence other than what was testified to. And I would like to reserve my time for rebuttal. Good morning. May it please the Court. My name is Helen Bruner. I'm here representing the Respondent, Michael McCasey. This question in this case does turn on the IJ's credibility findings here, and we submit that there's substantial evidence in the record supporting the finding that Mr. Kamara was not credible when he testified in this case. Does the timeliness issue turn on the credibility determination? Well, it turns on it only to the extent that the only evidence in the record regarding the timeliness of this application is his own testimony that he arrived on December 25th, 2002. That is the date in the application. But there's absolutely nothing else in the record to support him on that point. Is there anything contrary to that? Sometimes we find some other evidence that cuts against it. I didn't see anything to cut against that. Well, Your Honor, I suppose the one thing that does cut against it to a certain extent is his own – is the passport that he submitted. The passport, the Sierra Leone passport that he submitted actually has an issuance date of May 1st, 2003, with his signature on it. And he claimed this, of course, was a passport that was obtained for him by a friend in Sierra Leone and then sent to him when he supplied his I.D. to that person. Now, it – Why does that have any effect? Because that's post when he said he entered. Is that right? That's correct, Your Honor. So that would have been five months after he said he entered the United States or thereabouts. So that would possibly mean a later date that he came in. Exactly, Your Honor. I don't – I guess – which gets us back to the question of whether or not there is anything credible in his testimony. And once you conclude that his testimony was not credible, you cannot rely on the date that he has supplied, at which point I don't think you have jurisdiction over the asylum claim issue. But if we – you know, Judge Fletcher's question, earlier question about if – assuming we were to decide that the credibility determination is not supported by substantial or it requires a different outcome, do we then – can we then look at the asylum, the timing of this issue on asylum? So 1155883 says we have no jurisdiction to review a determination that an alien's asylum application had been submitted within one year. That's correct. I don't think you do, Your Honor, but I – What about Ramadan? Well, Ramadan goes to a question – it makes clear that mixed questions of law and fact certainly do come within the court's jurisdiction, but factual questions themselves do not. Well, so if you take his – so if you – if you say that there was – that the adverse credibility determination is not proper, and you take all his testimony is true, then you're just looking at historical facts, correct? That would be correct, Your Honor. So then could you look at the timing of this issue under – for asylum purposes? Under Ramadan? Your Honor, our position, obviously, is no, but I guess I would also suggest, Your Honor, that in this particular case, and the way we've argued this case to the So, in fact, that's what the IJ did in this case. The IJ found no credibility and then actually went back and said, even if you found him to be credible, he doesn't meet the standard either for asylum, withholding, or CAT. Did you find the Osman case when you were doing your briefing – it's a case which was pre-Ramadan, but it was a case in which they decided that there was credibility and that there was a timeliness of filing issue. And what the court said was, although we lack jurisdiction to review Osman's asylum claim, we encourage the BIA to reconsider it in light of our reversal of the credibility determination. It would appear that Osman complied with the one-year filing deadline. So what we were saying there was, well, we don't think we've got jurisdiction, but a government – in fairness, you better take another look. Well, and, Your Honor, I think in all honesty, the way we've presented this case to the court is that Mr. Kamara simply is not credible. Well, I understand that, but I'm just – we do – we have to re-decide that, so I'm trying to look at all the consequences. Tell us why was I.J.'s decision supported by substantial evidence on credibility. Your Honor, I think there's a number of reasons for that. His statements here were inconsistent, and let's leave aside for the moment the inconsistency with the application and the inconsistency with the asylum interview itself. He says initially that his house was half-burned in 1994. Then we go to 1997, and he says during that year or starts to testify that during that year the other half of his house was burned and that he ran with – he – I believe the testimony specifically is I grabbed one child and put it on my – put him – put it on my shoulder and my wife grabbed the other child. And when – when his own counsel pointed out that he did not have two children in 1997, he said, oh, I was confused. It must have been 1999. And then later says January 6th of 1999. Now, that's important, again, because he had just testified that his second child was not born until September 7th of 1999. Now, I will grant you, Your Honors, that an individual who does not read and write and will just assume for the sake of argument now that he does not might be confused as to dates, but I doubt very seriously that any parent with a child would forget running with that child and being confused about running with that child. I would also point out that the asylum application itself says that same child was born on January 1st of 1999. So was it a newborn he was running with? I don't know. He then goes back and says in his testimony that, in fact, his house was burnt in 1997  It was burnt again in 1999, and then we hear the same story again in 2002, and then he confuses when he ran with his parents and when he's cut with the RUF rebels with 1999 first and then 2002. And I would respectfully submit that he has to get to 2002, because that's when he says, I went to Gambia and from Gambia came to the United States in 2002. It's not so much even that he's confused on the dates. It's the lack of any sort of detail. And it seems to me that if you are someone who has had horrific events, your home or four, that at least when it came down to testimony under those circumstances, that you could at least provide a good story and a coherent story. Now, what further detail should he have been able to remember or was asked about that he would testify to? Well, he was certainly given the opportunity, I think, to clarify when these events occurred and when these events occurred with his children. Well, I would grant the date problems, but I was thinking no further detail. They burned half my house. Isn't that enough? Well, they burned half my house, Your Honor. But he then says, I come back from the bush and I move back into the house. It's not clear what happens. I guess I would have assumed that someone would talk about the struggles that they had. And I don't think that's a function of illiteracy. I think that's a function of the story. Nobody asked him those questions, though. He was asked, I think, I grant you no one asked that specific question, but they were open-ended enough questions that he was asked to provide detail and what happened in those years. And it was simply my house was burnt again. But I also would suggest, and I see I'm almost out of time here, that even if, and the I.J. did make these findings in his opinion and they were then affirmed by the Board of Immigration Appeals, that even if one came to the conclusion that there was not substantial evidence in the record to support the I.J.'s lack of credibility finding, that the changed country conditions here made a difference. And, in fact, that's one final point on inconsistency here. He had no recollection whatsoever that the war had ended, or at least that there had been a declaration that the war had ended or that there was a ceasefire or anything that he might otherwise remember. What did the country conditions in the State report show at the time that he was, had his hearing? May I? Yes. Go ahead. Yes. Yes. Answer Judge Farber's question. The country report showed that there was a ceasefire in May of 2001, and that by 2002, because of the peacekeepers that had come into Sierra Leone, that the war, the civil war was declared ended in January of 2002, and that the country was pretty much safe for travel anywhere in the country during 2002, which undermines his very credibility as to the events of 2002 and having his house burned in 2002. The report does not talk about RUF rebel attacks during 2002. Okay. Thank you. Thank you, Your Honor. We have no further rebuttal. No further rebuttal? Okay.  Then the matter will be submitted.
judges: Fletcher, Paez, Schwarzer